UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KAREN L HULETT,

    Plaintiff,

    v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 3:21-CV-971 JD

# OPINION AND ORDER

Plaintiff Karen Hulett appeals the denial of her claim for disability insurance benefits. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

**A. Factual Background**

Ms. Hulett filed an application for disability insurance benefits, alleging disability beginning May 22, 2017. Her date of last insured was December 31, 2022. Ms. Hulett's application was denied initially, on reconsideration, and hearings before an Administrative Law Judge ("ALJ"). Ms. Hulett indicated her disability was caused by physical health issues, including residual effects from a 2019 stroke, diabetes, thrombus, congestive heart failure, migraine, asthma, COPD, and obesity, and psychological health issues including depressive disorder, anxiety disorder, and post-traumatic stress disorder. (R. at 12–13.) The ALJ held two hearings and found that Ms. Hulett had several severe impairments but that she had not been disabled since May 22, 2017.

In particular, at Step Two of her analysis, the ALJ found that Ms. Hulett's mental health issues were supported by medical evidence in the record but did not rise to the level of severe impairment. This evidence included psychological examinations by state agency psychological consultants, and a psychological consultative examination. (R. at 24–25.) The ALJ ultimately found that Ms. Hulett's mental health issues constituted moderate limitations in all four of the Paragraph B criteria used to rate the severity of mental impairments. The four Paragraph B criteria are: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (R. at 24.) The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

### B. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

**C. Standard for Disability**

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the national economy.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D. Discussion**

Ms. Hulett alleges four errors by the ALJ which require remand in this case. First, that the ALJ erred by not appropriately considering the medical opinion of the state agency consultants. Second, the ALJ failed to acknowledge Ms. Hulett's need for a walker following her second stroke. Third, the ALJ applied inappropriate credibility analysis. Fourth, the ALJ inappropriately determined that 68,100 jobs in the national economy represented a significant number of jobs.

The Court only needs to address Ms. Hulett's argument regarding the ALJ's consideration of the state agency consultants' medical opinions in order to resolve this appeal. This argument is that the ALJ failed to fully incorporate the findings of the state agency consultants while formulating her RFC and consequently did not account for all of Ms. Hulett's limitations. The Court agrees that the RFC does not incorporate all of Ms. Hulett's mental limitations, which the ALJ found to be supported by the record, and that the omission of these limitations requires remand.

The ALJ found the opinions of the state agency psychological consultants to be partially persuasive. (R. at 24.) These opinions found that Ms. Hulett had moderate limitations in three out of the four Paragraph B criteria. (*Id.*) The ALJ's only point of disagreement was finding that Ms. Hulett also had a moderate, instead of a mild, limitation in her ability to interact with others. (*Id.*) The ALJ found the medical opinion of the consultative examiner Dr. Wax to also be partially persuasive. The ALJ found that each of these opinions supported the conclusion that Ms. Hulett could "respond appropriately to *brief* supervision and interactions with co-workers, and work situations, and deal with basic changes in a routine work setting." (R. at 24–25.)

The parties do not dispute the ALJ's conclusion, based on the medical reports of the state agency consultants and the consultative examiner, that Ms. Hulett has a moderate limitation in interacting with others and a moderate limitation in concentrating, persisting, or maintaining pace. (R. at 29.) Rather, the crux of the dispute is whether the ALJ properly accounted for these limitations in formulating an RFC which limited Ms. Hulett to "no work with the general public … but can have *occasional* interaction with coworkers and supervisors." (R. at 17.)

Ms. Hulett argues that the RFC insufficiently accounts for her limitations because the consultants indicated that Ms. Hulett was capable of responding appropriately to "brief

5

supervision and interactions with co-workers and work situations." (R. at 24, 113, 129.) Ms. Hulett argues that brief and occasional are not interchangeable terms, and therefore the ALJ's use of occasional instead of brief in the RFC reflects that she did not adequately consider Ms. Hulett's limitations. In support of this Ms. Hulett notes that occasionally is defined by agency regulations as "occurring from very little up to one third of the time." SSR 96-9p. In contrast, brief is undefined by agency regulation but has a common dictionary definition of "short in duration, extent, or length." (DE 14 at 12.) Therefore, Ms. Hulett argues, these terms are different measures of interactions, one measuring duration and the other measuring frequency, and the ALJ could not substitute one for another.

Ms. Hulett argues this error was harmful to her because the consultants likely utilized the term "brief" to accommodate her concentration, persistence, and pace issues and the ALJ functionally excluded that concern from her RFC by not including language which addressed this issue. Ms. Hulett also notes that the Vocational Examiner ("VE") was never asked about the impact of limiting a worker to "brief" interactions and therefore the VE's ultimate determination does not account for this limitation.

The Commissioner's response argues that the ALJ "translated" brief into the agency defined "quantifiable vocationally relevant term" of occasionally (DE 17 at 11).[1] The Court is unpersuaded by this argument for two reasons. First, this appears to be a post-hoc rationalization by the Commissioner. There is no evidence, either the ALJ's decision or the hearing transcript, that the ALJ decided to "translate" the term brief into occasional. The mere fact the ALJ seemed

---

[1] The Court would note it is unclear what the Commissioner means by "quantifiable vocationally relevant term." The word *brief*, while undefined by agency regulations, is certainly quantifiable if defined, and is likely vocationally relevant given it was used by two state agency psychological consultants in assessing Ms. Hulett's limitations.

to use these terms interchangeably is not sufficient to support the Commissioner's argument. The Court confines its review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner providers to supplement the ALJ's assessment of the evidence. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

Second, the Commissioner does not explain why this "translation" makes sense given the terms seem to have distinct meanings. As Ms. Hulett notes, *occasional* is defined by regulation as "occurring from very little up to one third of the time" while *brief* is undefined in regulations and a common dictionary definition indicates it has different meaning. SSR 96-9p. Prior decisions from this district seem to agree with Ms. Hulett's reasoning that occasional is a description of frequency. *Wartak v. Colvin*, 2016 WL 880945, *7 (N.D. Ind. Mar. 8, 2016) ("occasional contact goes to the quantity of time spent with the individuals"); *see also Hurley v. Berryhill*, 2018 WL 4214523, *4 (N.D. Ind. Sept. 5, 2018) (citing *Wartak's* definition of occasional).

As noted previously, *brief* is undefined by the regulations. But in at least one case an ALJ adopted a definition of the term proffered by the VE. In that case the VE defined brief interactions with supervisors and coworkers as "meaning no sales, negotiation, or any type of conflict resolution." *Nicholas S. C. v. Kijakazi*, 2022 WL 4462423, *6 (S.D. Ind. Sept. 26, 2022). While that definition is not controlling in this case, the fact it is different from the regulatory definition of occasional strongly suggests that experts in the field of employment classification and disability placement do not consider brief as being interchangeable with occasional. The Court has also found several other cases from sister courts which held that an ALJ erred by using the term *occasional* in the RFC formulation when the persuasive medical opinions restricted the

plaintiff to "*brief and superficial interactions*" with coworkers or supervisors. *See e.g. Matthew F. v. Kijakazi*, 2022 WL 1442243, *7–8 (D.N.J. May 6, 2022) (collecting cases noting a substantive distinction between "occasional" and "brief and superficial" interactions); *see also Thomas L.P. v. Comm. of Soc. Sec.*, 2022 WL 1590816, *6 (S.D. Oh. May 19, 2022) (ordering remand when the ALJ's use of "*brief and superficial*" and "*occasional*" limitations in the RFC was inconsistent with the medical expert opinions' use of those terms). While these cases are not binding and involve slightly different terminology issues, the Court finds the reasoning of these cases to be persuasive and that they weigh against the Commissioner's argument.

It is possible the ALJ intended for *occasional* to mean *brief* within the context of her order, or has some other rationale as to why those terms are interchangeable. However, absent any evidence of this reasoning in her order or the transcript of the hearings, the Court cannot make that inference on her behalf now. Therefore, the Court must agree with Ms. Hulett that the ALJ erred in using these terms interchangeably.

That being said, the Court's analysis does not end with finding that the ALJ erred. ALJ errors in interpreting medical opinion evidence are subject to harmless error analysis. *McKinsey v. Astrue*, 641 F.3d 884, 891–92 (7th Cir. 2011) (finding harmless error when the ALJ failed to assign weight to a state agency physician's opinion); *Jason M. v. Kijakazi*, 2022 WL 2071096, *5–*6 (S.D. Ind. June 9, 2022) (applying harmless error analysis to alleged failure to consider a medical opinion). An error is harmless when the reviewing Court, looking at all the evidence in the record, has great confidence the ALJ would reach the same result even without the error. *McKinzey*, 641 F.3d at 892. The Court cannot reach that conclusion in this case.

The question for harmless error analysis in this case is whether Ms. Hulett would be precluded from employment if she was limited to interactions with supervisors and coworkers

which were brief in duration, instead of limited to occasional meetings of indeterminate length. The record is unclear on this question as the ALJ did not solicit such information from the VE. Rather the VE only testified that a hypothetical person possessing the plaintiff's other restrictions would have employment opportunities if limited to occasional interactions with supervisors and coworkers. Based on the limited factual record for this precise question, the Court does not have great confidence the ALJ would have reached the same conclusion absent her error. As such, this case must be remanded for the ALJ to make the necessary factual findings.

The Court does not need to address Ms. Hulett's remaining arguments to resolve this appeal. If necessary, the remaining issues can be addressed by the ALJ on remand.

**E. Conclusion**

Accordingly, for the reasons stated herein, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: December 19, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court